IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

ANGELINA GAMBOA,

        Plaintiff,

vs.                                                          No. CIV 03-0179 RB/LAM

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

DEC - 4 2003

*[signature]*
CLERK

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss in Part (Doc. 9),

filed on April 17, 2003, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Jurisdiction and venue are proper under 28 U.S.C. §§§ 1331, 1332, and 1391.   Having reviewed

the submissions of the parties and the relevant law, the Court finds that the motion should be

granted.

### I. Background.

Plaintiff, Angelina A. Gamboa (hereinafter "Ms. Gamboa"), filed her Complaint for

Injunction and Declaratory Judgment and Damages on February 6, 2003, alleging claims under

29 U.S.C. § 1001 et. seq. and the statutory and common law of New Mexico against UNUM Life

Insurance Company of America (hereinafter "UNUM") arising from her employment with El

Paso Electric. (Compl. at ¶ 4)

The defendant, UNUM, is the claims administrator of a disability plan covering certain

employees of El Paso Electric.  *Id.* ¶¶ 8-9.  The plan provides disability benefits to participants

who become disabled under the terms of the plan.  *Id.*  In February 2000, UNUM terminated Ms.

Gamboa's benefits.  *Id.* ¶ 22.

Ms. Gamboa then filed suit with this Court claiming that the denial was in "bad faith,"



because it was not reasonable under the circumstances and UNUM's conduct was "willful, wanton, [and in] malicious . . . disregard for [her] rights under the plan." *Id.* ¶¶ 40-41. Ms. Gamboa also claims that UNUM violated the Unfair Insurance Practice Act (hereinafter "UIPA") by unreasonably representing, investigating, and denying her claim. *Id.* ¶ 45. Ms. Gamboa also claims that UNUM violated the Unfair Practices Act (hereinafter "UPA") through misrepresenting, and failing to deliver, the service provided under its contract. *Id.* ¶ 51.

UNUM has moved to dismiss counts II (bad faith), III (UIPA), and IV (UPA) as pre-empted by the Employee Retirement Income Security Act (hereinafter "ERISA"). (Def.'s Mot. to Dismiss ¶¶ 1&2) Additionally, UNUM has moved to dismiss Ms. Gamboa's claims for extra contractual damages. *Id.* ¶ 2.

## II. Standard for Motion to Dismiss.

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); FED.R.CIV.P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all the well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the non-moving party. *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1336 (10th Cir. 1999). In accepting the complaint's allegations as true, the court must consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted. *Ordinance 59 Ass'n v. United States Dep't of Interior*, 163 F.3d 1150, 1152 (10th Cir. 1998). "Granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading, but also to protect the interest of justice." *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989)

(quoting *Morgan v. City of Rawlins*, 792 F.2d 975 (10th Cir. 1986)).

**III. Analysis.**

     Congress enacted ERISA in order to implement a uniform, nationwide system of

employee pension benefits and to prohibit multiple and inconsistent state and local regulations.

*See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987). ERISA's broad pre-emption clause

provides: "Except as provided in subsection (b) of this section, the provisions of this subchapter

and subchapter III of this chapter shall supersede any and all State laws insofar as they may now

or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(b)(2)(A) (1988). Despite its

extensive parameters, ERISA's pre-emptive power is not absolute. The insurance-saving clause

of ERISA provides: "Except as provided in subparagraph (B), nothing in this subchapter shall be

construed to exempt or relieve any person from any law of any State which regulates insurance,

banking, or securities." 29 U.S.C. § 1144(b)(2)(A) (1988).

     **A. Whether ERISA Pre-empts Ms. Gamboa's Count II Bad Faith Claim?**

     Ms. Gamboa contends that a growing number of federal courts have turned away from a

strict interpretation of ERISA's savings clause and have increased the different types of state

laws and remedies that are deemed to regulate insurance. (Pl.'s Br. 1 ) Ms. Gamboa argues that,

under this new trend, her bad faith claim should be saved from pre-emption. *Id.* UNUM argues

that Ms. Gamboa's bad faith claim is derived from the New Mexico common law and, as such, is

pre-empted under ERISA. (Def.'s Br. 6. ¶ 1).

     For a state law to be deemed a "law . . . which *regulates* insurance" under ERISA, it must

satisfy two prongs. First, the state law must be specifically directed toward entities engaged in

insurance. Second, the state law must substantially affect the risk pooling arrangement between

the insurer and the insured. *Kentucky Association of Health Plans v. Miller*, ____U.S.____,123

S.Ct. 1471, 1480 (2003).[1]

Ms. Gamboa's bad faith claim does not pass the first *Miller* prong. The Supreme Court has previously held that bad faith law is not specifically directed toward entities engaged in the insurance industry. In *Pilot Life,* the Supreme Court held that, despite a Mississippi Supreme Court ruling that had identified its law of bad faith with the insurance industry, the origins of bad faith law are firmly rooted in the general principles of tort and contract law. *Id.* at 50. The *Pilot* Court reasoned that any breach of contract, not merely a breach of an insurance contract, may lead to liability for punitive damages under bad faith. *See id.* Similarly, New Mexico's bad faith law is rooted in tort and contract law. *See Watson Truck & Supply Co. v. Males,* 111 N.M. 57, 60, 801 P.2d 639, 642 (N.M. 1990). Furthermore, because Ms. Gamboa's bad faith claim does not pass the first *Miller* prong, the Court need not consider whether the second *Miller* prong is satisfied. *See Miller,* 123 S.Ct. at 1471.

### B. Whether ERISA Pre-empts Ms. Gamboa's Count III Unfair Insurance Practice Act?

ERISA also pre-empts Ms. Gamboa's New Mexico Unfair Insurance Act claim. The UIPA meets the first prong of the *Miller* test as it is specifically directed towards the insurance industry. *See* §59A-16-2 NMSA 1978 (2000). However, it fails the second *Miller* requirement in that it does not substantially affect the risk pooling arrangement between the insurer and the insured. An example of the type of state law that has been held to substantially affect the risk-pooling arrangement can be found in *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724

---

1. The Supreme Court, in *Miller,* has recently clarified the analysis used when determining whether a state law is pre-empted by ERISA. Before the *Miller* decision, Federal Courts used both a "common sense" approach and three factors articulated in the McCarran-Ferguson Act. These three factors are: (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry.

4

(1985).

In *Metropolitan Life*, the State of Massachusetts enacted a mandatory benefit law. The benefit law was designed, in part, to expand mental health services to ensure that not only wealthy residents would be provided adequate mental health treatment should they require it. The Court reasoned that the law at issue affected the spreading of risk in that it re-allocated the risk pool to provide coverage to all health insurance policyholders; not just those likely to use mental health services. *Metropolitan Life*, 471 U.S. at 724. In the instant case, UIPA is substantively different from the state law in *Metropolitan Life*. UIPA does not have the effect of transferring a policy holder's risk, nor is it an integral part of the policy relationship between the insurer and the insured.

### C. Whether ERISA Pre-empts Ms. Gamboa's Count IV Unfair Practices Act?

This Court has already held that New Mexico UPA claims are pre-empted under ERISA. *Nechero v. Provident Life & Accident Ins*. Co., 795 Supp. 374 (D.N.M. 1992). Additionally, Ms. Gamboa's UPA claim would not pass the first *Miller* prong. UPA claims are not limited to the insurance industry and "can be brought against any person in the regular course of his trade or commerce." NMSA §57-12-2(D). As a result, the UPA is not specifically directed toward entities engaged in the insurance industry. Moreover, in that Ms. Gamboa's UPA claim does not pass the first *Miller* prong, the Court need not consider whether the second *Miller* prong is satisfied. *See Miller*, 123 S.Ct. at 1471.

### D. Whether Ms. Gamboa's Request for Extra-Contractual Damages including Economic Losses, Incidental Damages, Consequential Damages and Punitive Damages Should Also be Dismissed as Pre-Empted under ERISA?

The Supreme Court noted, in *Pilot Life*, that the civil enforcement provisions of ERISA 29 U.S.C. § 1132(a) are the exclusive vehicle for actions by ERISA-plan participants asserting

5

improper processing of a claim for benefits. *Pilot Life*, 481 U.S. at 52.  Further, the Tenth Circuit has previously held extra-contractual, economic, incidental, consequential, and punitive damages to conflict with ERISA's exclusive remedial scheme.  "The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Kelly v. Sears, Roebuck & Co.*, 882 F.2d 453, 456 (10th Cir. 1989) (quoting *Denette v. Life of Indiana Ins. Co.*, 693 F.Supp. 959, 966 (D. Co. 1988)).  Thus, Ms. Gamboa's request for extra-contractual, economic, incidental, consequential, and punitive damages should similarly be dismissed  as pre-empted under ERISA.

**IV.  Conclusion.**

The bad faith claim of Count II and the unfair practice claim of Count IV should be dismissed since neither is specifically directed towards entities engaged in the insurance industry. Ms. Gamboa's Unfair Insurance Practice claim, Count III, should also be dismissed in that the Unfair Insurance Practice claim does not substantially affect the risk pooling arrangement between the insurer and the insured.  Moreover, Ms. Gamboa's request for extra-contractual, economic, incidental, consequential, and punitive damages should also be dismissed  as pre-empted under ERISA.

**WHEREFORE,**

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss in Part (Doc. 9), filed April 17, 2003, is hereby **GRANTED**.


**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**